65 So.3d 99 (2011)
C.K., Appellant,
v.
B.B. o/b/o T.S., minor child, Appellee.
No. 2D10-5175.
District Court of Appeal of Florida, Second District.
June 24, 2011.
Lisa Kirby of Kirby & Cavanaugh, P.A., Naples, for Appellant.
Jim D. Shumake of Jim D. Shumake, P.A., Naples, for Appellee.
DAVIS, Judge.
C.K. (the Mother) challenges the trial court's final judgment of injunction for protection against domestic violence entered against her and in favor of B.B. (the Father), acting on behalf of the parties' eight-year-old daughter, T.S. Because the record before us does not establish that the child is the victim of domestic violence or is in imminent danger of becoming a victim of domestic violence at the hands of the Mother, we reverse.
In his petition for injunction for protection against domestic violence, the Father alleged the following:
I have a fear that [the child] could become [the] victim of domestic violence, *100 because of her mother and mother's boyfriend abusing drugs (Rox[i]codone, prescription pain medication). Boyfriend has been verbally abusive. The mother seems unable to protect the child from verbal [abuse] and witnessing drug abuse. Mother drives while child is in her car while under the influence of drugs. Mother has passed out for hours at a time leaving daughter to fend for herself. I believe the boyfriend is a drug dealer, many reports have been made to Dep't of Children and Families. I'm very fearful for the safety and well-being of my daughter.
At the hearing on the petition, the Father presented no evidence regarding the boyfriend's drug use, verbal abuse, or drug dealing. Likewise, he presented no evidence that the Mother had passed out for hours leaving the child unattended. As such, we conclude that he has waived those allegations. Additionally, the record before us seems to suggest that the reports to the Department of Children and Family Services that the Father references have all been made by the Father himself.
With regard to the Mother's drug use and her driving under the influence of drugs with the child in the car, the Father testified that he witnessed the Mother "driving with her children in the car intoxicated on prescription pain killers that she does not have a prescription for." Additionally he testified that at "a parent/teacher meeting where the children bring their parents in to meet the teacher[, the Mother] was lethargic, for lack of a better word, could not concentrate on what she was saying, slurred speech, could not pay attention to what wasspeaking with her was difficult."
The Father's second witness testified that she had known the Mother for about two years and that a couple of weeks prior to the hearing she had witnessed the Mother at a Publix Super Market. According to the witness, on that occasion the Mother "couldn't walk. She didn't even know where the front entrance to the store was. She looked confused. She didn't look like she was there at all." On cross-examination conducted by the Mother, who appeared below pro se, the witness testified as follows: "You were sitting in the car with your boyfriend and then you got out, and me and my stepdaughter stood at the car and watched you, and you stood there for probably three to four minutes before you even entered, and you were just lost, you looked lost." The witness, however, did not testify that the child was with the Mother on that occasion.
The Mother's eighteen-year-old son testified that he believed the Mother has a problem with prescription pain killers. But he also testified that he did not believe that she would ever harm his brothers or sisters.
Finally, the child's paternal grandmother testified about two specific occasions on which the Mother's behavior had concerned her. On one occasion, the Mother dropped the child off at the grandmother's home and "was leaning over the steering wheel of her car and appeared to be ill. She asked if she could come in and get a drink of water or something. . . . She could barely make it up the steps. . . . She had her little boy with her, who is four, and [the parties' daughter]." On the other occasion that the grandmother referenced, she and her husband went to the Mother's home to pick up the child. The grandmother saw the Mother
come out the front door, stumbling and disoriented, and heading for her car with her children, and apparently planned to take [the child] with her, but we showed up before they left. Then she was shaking so bad that she asked me if I would put the key in her car door because she *101 couldn'tshe was shaking too much to do it herself. . . . I said . . . I'm really worried about you driving in this condition with the children.
Following the hearing, the trial court granted the injunction, awarding the Father, on a temporary basis, "100% . . . of the time-sharing with the parties' minor child" and requiring the Mother to undergo a substance abuse assessment and follow the resulting recommendations.
On appeal, the Mother argues that the Father failed to meet his burden below of establishing that the child was a victim of domestic violence or was in imminent danger of becoming a victim of domestic violence. We agree.
Upon notice and hearing, when it appears to the court that the petitioner is either the victim of domestic violence as defined by s. 741.28 or has reasonable cause to believe he or she is in imminent danger of becoming a victim of domestic violence, the court may grant such relief as the court deems proper, including an injunction. . . .
§ 741.30(6)(a), Fla. Stat. (2010) (emphasis added). Section 741.28 defines "domestic violence" as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member."
The only part of this definition that might be implicated by the evidence presented in this case is "any criminal offense resulting in physical injury or death" of the parties' child. In his petition for injunction for protection against domestic violence, the Father only alleged that his daughter "could become [the] victim of domestic violence." (Emphasis added.) Therefore, the question we must address is whether, under section 741.30(6)(a), the Mother's behavior provides the reasonable cause to believe that the child is in imminent danger of becoming a victim of domestic violence. We conclude that it does not.
Although the grandmother testified that the Mother looked "shaky" and "ill" on two occasions, on only one of those occasions did she see the child actually in the car with the Mother while the Mother was driving. She also testified that at no time did she witness the Mother take prescription drugs. In fact, no witness specifically testified that they had seen the Mother take prescription drugs. The Father's evidence was purely anecdotal and at best established that, on a handful of occasions, the Mother had appeared in public looking "shaky" or "ill" or "out of it." But nothing in the Father's evidenceother than unsubstantiated allegations of drug useestablished the cause of the Mother's behavior.
Because this falls short of establishing that the child was in imminent danger of becoming a victim of domestic violence, we must reverse.
Reversed.
SILBERMAN and BLACK, JJ., Concur.